IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter ) | CV NO. 03-00672 SOM-BMK |
| ) | |
| of ) | |
| ) | |
| The Complaint of MORNING STAR ) | |
| CRUISES, INC., a Hawaii ) | |
| corporation. ) | |
| ) | CV NO. 04-00588 SOM-BMK |
| SHIROH FUKUOKA, ) | [CONSOLIDATED] |
| ) | |
| Plaintiff, ) | **MEMORANDUM IN SUPPORT** |
| ) | **OF MOTION** |
| vs. ) | |
| ) | Trial: August 22, 2006 |
| MORNING STAR CRUISES, INC., ) | Time: 9:00 a.m. |
| ) | Judge: Hon. Susan Oki Mollway |
| Defendant. ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF MOTION

### I.   Introduction

This case arises out of a maritime incident. On August 14, 2002, Mitsuko Fukuoka was booked on a cruise with Morning Star Cruises, Inc., (hereinafter referred to as "Morning Star") and was a passenger of a certain 24 steel foot vessel (hereinafter referred to as the "Vessel") owned and operated by Morning Star. The Vessel was operated by Morning Star in connection with the transportation of passengers and ocean activities for hire upon the navigable waters

of the United States in the vicinity of Kaneohe Bay Ocean Recreation Management Area. Mitsuko Fukuoka was injured while utilizing the "SeaWalker" system from the Vessel in Kaneohe Bay. The "SeaWalker" systems is comprised of an underwater helmet and a compressor system which delivers a continual stream of fresh air to the helmet. Users descend to the ocean floor using a special "seawalker ladder" and stroll on the ocean floor. Mitsuko Fukuoka signed up for the "SeaWalker" activity, and approximately five minutes into her dive, gave the hand signal for distress. The crew pulled her to the surface of the boat and she was subsequently taken to Castle Medical Center.

On September 8, 2003, a lawsuit was commenced in the Circuit Court of the First Circuit of the State of Hawaii, Civil No. 03-1-1819, captioned SHIROH FUKUOKA, *Individually and as Personal Representative of* THE ESTATE OF MITSUKO FUKUOKA, *and as Next Friend of* MIHO FUKUOKA, *a Minor, Plaintiffs*, vs. MORNING STAR CRUISES, INC., a HAWAII CORPORATION et al, Defendants.

Pursuant to the U.S. Limitation of Liability Act, 46 U.S.C.A § 183 *et seq*., and the Federal Rules of Civil Procedure 9(h) and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, MORNING STAR CRUISES, INC. initiated a Complaint for Exoneration from or Limitation of Liability December 8, 2003, and a First Amended Complaint for Exoneration from or

Limitation of Liability, Civil No. CV03-00672 SOM, in the United States District Court for the District of Hawaii on December 18, 2003.

Pursuant to a Stipulation filed on April 26, 2004, Defendant/Limitation Plaintiff filed a Notice of Removal of Civil NO. 03-1-1819-09 to the United States District Court for the District of Hawaii and a consolidation with Civil No. CV03-00672 SOM for discovery and trial. In accordance with the Stipulation, Limitation Plaintiff filed a Notice of Deposit of Funds with the Court, the sum of four thousand and no/100 dollars ($4,000.00), representing the value of the Vessel and compressor attached to the vessel, for the payment of judgments, if any, against Limitation Plaintiff arising out of the accident involving Mitsuko Fukuoka.

Limitation Plaintiff/Defendant MORNING STAR CRUISES, INC., now seeks an order granting Summary Judgment for its Complaint for Exoneration from or Limitation of Liability.

II.   **Legal Standard for Summary Judgment**

Rule 56(c) of the *Federal Rules of Civil Procedure* provides in pertinent part as follows:

> [Summary Judgment] **shall be rendered forthwith** if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. (emphasis added)

3

Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.*

The United States Supreme Court has stated that summary judgment must be granted against a party who fails to demonstrate, after an adequate time for discovery, that there is a genuine issue of facts to establish elements essential to his case where that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed2d 265 (1986).

"If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact…, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contracotrs Ass'n* 809 F.2d 626, 630 (9th Cir. 1987).

The United States Supreme Court has established that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, if the evidence offered by the nonmoving

party is "merely colorable," or "is not significantly probative," the motion for summary judgment should be granted. *Id*. at 1356.

### III. Discussion

The test for general maritime jurisdiction under 28 U.S.C.A. § 1333 consists of a two-prong test, a "location" prong and a "connection" prong. *Jerome v. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995); *McClenahan v. Paradise Cruises, Ltd*, 888 F.Supp 120 (Haw. 1995).

Under the first prong, a court must determine whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water. Under the second prong, two issues are raised: (1) whether the incident has a "potentially disruptive impact on maritime commerce" (viewing the "general features of the type of incident involved") and (2) whether the "general character" of the "activity giving rise to the incident' bears a "substantial relationship to traditional maritime activity." *McClenahan v. Paradise*, 888 F.Supp 120 (D,Haw. 1995) (quoting *Grubart* 513 U.S. 527, 532-534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995); *In the Matter of Pacific Adventures Inc*., 5 F.Supp.2d 874, 877 (D.Haw.1998).

### A. Location Prong

The first prong, the "location" prong of the test for admiralty jurisdiction, is met. The tort must have occurred on navigable waters. The underlying incident involved an accident that occurred in the navigable waters of Kaneohe Bay, Hawaii. The federal courts have held that navigable waters are waters that "form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water." *LeBlanc v. Cleveland*, 198 F.3d 353, 357 (2nd Cir. 1999) (quoting The *Daniel Ball*, 77 U.S. (10 Wall.) 557, 10 L.Ed. 999 (1870)). See also *Finneseth v. Carter*, 712 F.2d 1041, 1043 (6th Cir. 1983). The first prong of the test for admiralty jurisdiction has occasionally been characterized by the courts as simply requiring that "the injury occur on water." *Taghadomi v. U.S.* 401 F.3d 1080 n..6 (9th Cir.2005) (quoting *Whitcome b. Stevedoring Services of America*, 2F.3d 312, 314 (9th Cir.1993)). There is no dispute that the location of the incident, Kaneohe Bay, is navigable water and therefore the first prong determining admiralty jurisdiction is satisfied.

## B. Connection Prong

The second prong of the test for general maritime jurisdiction, the "connection" prong, is also met in this instance. In applying the connection test, a court first must assess the "general features of the type of incident involved" to

determine if the incident has "a potentially disruptive impact on maritime commerce." <u>Grubart</u> 144 S.Ct. at 1045 (quoting <u>Sisson, 497 U.S. 358, 363, 364 n. 2, 110 S.Ct. 2892, 2896, 2896 n.2, 111 L.Ed.2d 292)</u>. If the general features of the incident involved do have a potentially disruptive impact on maritime commerce, the court then must determine whether the character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. <u>Id.</u>

### 1. Potentially Disruptive Impact On Maritime Commerce

The first issue of the "connection" prong is whether the incident has a "potentially disruptive impact on maritime commerce." This Court has found that injuries at sea invariably have potential impact on maritime commerce. <u>McClenahan</u>, 888 F.Supp at 122[1]. See also, <u>Foremost Ins. Co. v. Richardson</u> <u>457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982);</u> <u>Complaint of Kanoa</u>, <u>872 F.Supp. 740, 745 (D.Haw.1994);</u> <u>In the Matter of Pacific Adventures</u>, Inc. <u>5 F.Supp.2d 874 (D.Haw. 1998)</u> (admiralty jurisdiction found when scuba diver injured from one of the vessels leaving the dive spot).

In determining whether the incident has a potentially disruptive impact on maritime commerce, the United States Supreme Court focuses not on the specific facts at hand, but on whether the "general features" of the incident were

---

[1] Plaintiffs were injured while "snuba" diving. Snuba diving is similar to snorkeling and uses a common air supply floating on the surface with air hose for a group of divers. Court noted that the case had potential for disruptive impact on maritime commerce.

"likely to disrupt commercial activity. *Grubart*, 513 U.S. at 538, 115 S.Ct. at 1051. (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct., at 2892, 111 L.Ed.2d 292 (1990)). In *Grubart*, the United States Supreme Court found that there was "little question" that "damage by a vessel in navigable water to an underwater structure" had "a potentially disruptive impact on maritime commerce." Damaging the structure could lead to a disruption in the water course itself and could lead to restrictions on navigational use during repairs. *Grubart*, 513 U.S.at 528, 115 S.Ct. at 1045.

The "general features" of the incident at hand may be characterized as 'injury sustained while participating in an ocean activity from a vessel in navigable water.' The 9th Circuit has held that the general features of a case described as "injury to boaters whose vessel capsizes at sea because of a potential rescuer's negligence in carrying out its rescue operation" was clearly, at any reasonable level of generality, an incident that had a potentially disruptive impact on maritime commerce. *Taghadomi*, 401 F.3d at 1086. *See* also, e.g., *Polly v. Estate of Carlson*, 859 F.Supp. 270, 272 (E.D.Mich.1994) ("That men were overboard in an emergency situation by itself is likely to disrupt commercial activity…") See also, *McClenahan*, 888 F.Supp at 123 injury sustained during "snuba" activity); *Pacific*, 5 F.Supp.2d at 877 (injury sustained while scuba diving). Clearly the "general features" of the incident, an injury sustained while participating in an ocean

8

activity from a vessel in navigable water, has a potentially disruptive impact on maritime commerce, thus resolving the first issue of the "connection" prong.

### 2. Substantial Relationship To Traditional Maritime Activity

The second issue of the "connection" prong is whether the activity that gives rise to the incident bears a substantial relationship to traditional maritime activity. The Supreme Court clarified that ""[t]he substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident. _McClenahan_, 888 F. Supp. At 122 (quoting _Grubart_ 513 U.S. at 541, 115 S.Ct. at 1052).

In _Pacific_, vessel owners filed limitation of liability actions arising from an accident in which a scuba diver's leg became entangled in the propeller of one of the vessels as it was leaving a dive spot. The scuba diver filed claims against vessel owners and various employees and agents. The court found that allegations involving the negligent operation of a vessel and the failure to administer first aid were activities that established a substantial relationship with traditional maritime activity. _Pacific_ 5 F. Supp.2d at 878. See also _Kanoa, 872 F.Supp. at 745 & n3_ (stating that admiralty jurisdiction governs an allegation that a crew failed to administer proper first aid); _In the Matter of the Complaint of Paradise Holdings, Inc_. 795 F.2d 756, 760 (9th Cir. 1986) (finding that a claim for

negligent operation of a vessel when it collided with a body-surfer established a substantial relationship with traditional maritime activity); <u>McClenahan</u> 888 F.Supp. at 122 (Court held that allegations of negligence on the part of the vessel and operators have substantial relationships with maritime activity when plaintiffs brought suit against vessel and seller of cruise, seeking damages for injuries sustained while "SNUBA" diving). This court has held that admiralty jurisdiction has been established in actions involving claims of negligence involving negligent vessel operation and failure to provide proper first aid.

   Establishing admiralty jurisdiction in the case at bar is in line with previous holdings of this court.  Plaintiffs/Limitation Defendants allege that Morning Star was negligent, inter alia, in its failure to operate and monitor the activity, failure to prepare the equipment for activity, and failure in its response to Mitsuko Fukuoka's distress. Plaintiffs/Limitation Defendants allegations of negligence in operation, management, maintenance and response to distress on the part of Morning Star bear a substantial relationships with traditional maritime activity and therefore the second issue of the "connection" prong is met.

   The incident described herein satisfies both the "location" and "connection" prongs of the test for general maritime jurisdiction under <u>28 U.S.C.A. § 1333</u>. The incident described herein occurred on navigable waters and the alleged tort that occurred while participating in the "seawalker" ocean activity has

a substantial relationship to traditional maritime activity and a potentially disruptive impact on maritime commerce. As such, there is no genuine issue of material fact and Morning Star is entitled to summary judgment as a matter of law.

### IV.  Conclusion

Based on the foregoing, Limitation Plaintiff respectfully requests an order granting Summary Judgment in favor of Limitation Plaintiff's Complaint for Exoneration From Or Limitation of Liability.

DATED: Honolulu, Hawaii, May 17, 2006.

>  /s/ Desiree Hikida Mokuohai
>  **GREGORY K. MARKHAM**
>  **KEITH K. KATO**
>  **DESIREE HIKIDA MOKUOHAI**
>
>  Attorneys for /Defendant
>  Limitation Plaintiff
>  **MORNING STAR CRUISES, INC.**