**INCLINATIONS**

It is Judge Mollway's practice, whenever possible, to notify attorneys and <u>pro se</u> parties scheduled to argue motions before her of her inclinations on the motions and the reasons for the inclinations.  This is part of Judge Mollway's normal practice, rather than a procedure unique to a particular case, and is designed to help the advocates prepare for oral argument. It is the judge's hope that the advance notice of her inclination and the accompanying reasons will focus the oral argument and permit the advocates to use the hearing to show the judge why she is mistaken or why she is correct.  The judge is not bound by the inclination and sometimes departs from the inclination in light of oral argument.

Judge Mollway attempts to communicate her inclinations no later than one working day before a hearing.  The court's preference is to distribute the inclinations to the parties via the court's electronic filing system ("CM/ECF").  Accordingly, parties are encouraged to participate in the court's CM/ECF system.

The inclination is intended to be only a summary of the court's thinking before the hearing and not a complete legal discussion.  The court will issue a written order with a detailed analysis after the hearing.

The parties are reminded that, under Local Rule 7.4, they may not submit supplemental briefs (such as briefs addressing the inclination) unless authorized by the court. Supplemental declarations, affidavits, and/or other evidence in response to the court's inclinations are prohibited unless authorized by the court.  The parties are also reminded that they must comply with Local Rule 7.8 if they intend to rely on uncited authorities at the hearing.

Occasionally, Judge Mollway does not announce an inclination, especially if materials are submitted to her right before the hearing.  Because briefing on criminal motions closes just a few days before the hearing, it is not uncommon for her to be unable to announce an inclination on a criminal motion until the start of the hearing itself.  Certainly if an evidentiary hearing is scheduled on matters necessary to a decision on either a civil or criminal motion, no inclination will be announced.

Judge Mollway's inclinations may not be cited as authority for any proposition.  However, the inclinations will be electronically filed for the convenience of the parties.

Judge Mollway announces the following inclinations:

In re. Morning Star Cruises, Inc., Consolidated Civ. Nos. 03-00672 SOM/BMK and 04-00588 SOM/BMK.

This case arises out of an underwater excursion that allegedly led to the drowning of Mitsuko Fukuoka.  In August 2002, Morning Star Cruises, Inc., took Mitsuko Fukuoka, her husband (Shiroh Fukuoka), and her minor daughter (Miho Fukuoka), all Japanese citizens, to a place on the water.  At that location, the Fukuokas donned diving helmets connected to an air tube, went underwater, and breathed air pumped into their helmets from the surface.  Somehow, Mitsuko drowned (the "Accident").

On September 8, 2003, Shiroh Fukuoka, individually and as personal representative of the Estate of Mitsuko Fukuoka, and as next friend of Miho Fukuoka, filed a complaint in the Circuit Court of the First Circuit, State of Hawaii.  See Complaint, Civ. No. 03-1-1819-09 (Sept. 8, 2003) ("State Tort Suit").  This complaint named Morning Star Cruises, Inc., a Hawaii corporation, and various Does as defendants, alleging state-law torts of Negligence/Wrongful Death (Count I), Negligence (Count II), Failure to Warn (Count III), Intentional/Negligent Infliction of Emotional Distress (Count IV), Loss of Consortium (Count V), and Gross Negligence/Recklessness (Count VI).  The State Tort Suit complaint did not allege any causes of action under federal law. The State Tort Suit appears to have been authorized by the Saving to Suitors clause found in 28 U.S.C. § 1331(1).  See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 440 (2001); In re. X-Treme Parasail, Civ. No. 05-00790 SOM/BMK, Order Lifting Injunction; Order Denying Request to Enjoin Claims Against Greg S. Longnecker; Order Dismissing Case, electronically filed in the United States Court for the District of Hawaii on July 7, 2006, as Item No. 77 in the case docket, available through the court's Case Management/Electronic Case Filing system accessible through the PACER system.

On December 8, 2003, Morning Star Cruises filed a Complaint for exoneration from or limitation of liability under 46 U.S.C. §§ 181 to 195 (the "Limitation Act") and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. See Complaint, Civ. No. 03-00672 SOM/BMK (Dec. 8, 2003) ("Limitation Act Suit").

On September 29, 2004, Morning Star Cruises removed the State Tort Suit to this court.  See Notice of Removal, Civ. No. 04-00588 DAE/KSC (Sept. 29, 2004).  The State Tort Suit Plaintiffs stipulated to the removal.  See id., Ex. A.  Pursuant to the same stipulation, the State Tort Suit Plaintiffs' Complaint was deemed to be their claim in the Limitation Act

2

Suit.  Id.  The parties also stipulated to the consolidation of the State Tort Suit and the Limitation Act Suit.

        The court is inclined to rule that the removal of the State Tort Suit was improper, as it alleged only state torts and not federal questions.  See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983); Takeda v. Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 821 (9th Cir. 1985).  The court is inclined to rule that the possibility that Morning Star Cruises might assert a defense involving a federal question was insufficient to allow removal.  See Caterpillar Inc. v. Williams, 482 U.S. 386, 399 (1987).  The court is further inclined to rule that removal was not proper under this court's § 1332(1) diversity jurisdiction, as Morning Star Cruises, the defendant in the State Tort Suit, is a Hawaii corporation.  See 28 U.S.C. § 1441(b).

        The parties should come to the hearing prepared to discuss whether the State Tort Action should be remanded to state court if the court determines that it was improperly removed. The parties should be prepared to discuss whether any improper removal involves only a procedural defect (such as removal by a citizen of the forum state) that is waivable.  See Local Union 598, Plumbers & Pipefitters Indus. Journeyman & Apprentice Training Fund v. J.A. Jones Constr. Co., 846 F.2d 1213, 1215 (9th Cir. 1988); Geothermal Res. Group v. Puna Geothermal Venture, 216 F. Supp. 2d 1133, 1135 n.3 (D. Haw. 2001).  The parties should also consider whether removal was improper on an unwaivable ground such as lack of diversity jurisdiction.  The parties should be prepared to discuss whether there is diversity jurisdiction in the State Tort Suit if liability must be limited to $4,000.  That is, does this court have subject matter jurisdiction over a tort action in which the maximum judgment will be less than the jurisdictional threshold for diversity actions?

        The court notes that is has issued an order that prohibits the trial date from being continued without the express consent of this judge.  Assuming that the State Tort Suit is not remanded and that the Limitation Act Suit is not dismissed as discussed in Lewis and in X-Treme Parasail, the parties should come to the hearing prepared to discuss whether the Fukuokas will be attempting to file a motion to identify Doe Defendants who are not owners of the vessel subject to the Limitation Act under the Saving to Suitors clause found in 28 U.S.C. § 1331(1).  If the Fukuokas intend to file such a motion so that they are not limited to a recovery of $4,000, they should be prepared to discuss how the present trial date may be retained even given any such motion.