IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In the Matter | ) | CIV. NO. 03-00672 SOM/BMK |
| | ) | (consolidated) |
| of | ) | |
| | ) | |
| The Complaint of MORNING STAR | ) | ORDER DETERMINING EXISTENCE |
| CRUISES, INC., a Hawaii | ) | OF ADMIRALTY JURISDICTION |
| corporation, | ) | |
| | ) | |
| Petitioner, | ) | |
| _____ | ) | |
| | ) | |
| SHIROH FUKUOKA, Individually | ) | CIV. NO. 04-00588 SOM/BMK |
| and as Personal | ) | (consolidated) |
| Representative of the ESTATE | ) | |
| OF MITSUKO FUKUOKA, and as | ) | |
| Next Friend of MIHO FUKUOKA, | ) | |
| a Minor, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MORNING STAR CRUISES, INC., a | ) | |
| Hawaii Corporation; JOHN DOES | ) | |
| 1-10; JANE DOES 1-10; DOE | ) | |
| CORPORATIONS 1-10; DOE | ) | |
| PARTNERSHIPS 1-10; DOE | ) | |
| VENTURERS 1-10; DOE LIMITED | ) | |
| LIABILITY ENTITIES 1-10; DOE | ) | |
| GOVERNMENTAL ENTITIES 1-10; | ) | |
| DOE UNINCORPORATED ENTITIES | ) | |
| 1-10; AND OTHER DOE ENTITIES | ) | |
| 1-10, | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |

ORDER DETERMINING EXISTENCE OF ADMIRALTY JURISDICTION

I.      INTRODUCTION AND FACTUAL BACKGROUND.

        This case arises out of an underwater excursion that allegedly led to the drowning of Mitsuko Fukuoka.  In August

2002, Morning Star Cruises, Inc., took Mitsuko Fukuoka, her husband (Shiroh Fukuoka), and her minor daughter (Miho Fukuoka), all Japanese citizens, to a place on the water.  At that location, the Fukuokas donned diving helmets connected to air tubes and went underwater, thinking they would be breathing air pumped into their helmets from the surface.  Somehow, Mitsuko drowned (the "Accident").

On September 8, 2003, Shiroh Fukuoka, individually and as personal representative of the Estate of Mitsuko Fukuoka, and as next friend of Miho Fukuoka, filed a complaint in the Circuit Court of the First Circuit, State of Hawaii.  See Complaint, Civ. No. 03-1-1819-09 (Sept. 8, 2003) ("State Tort Suit").  This complaint named Morning Star Cruises, Inc., a Hawaii corporation, and various Does as defendants, alleging state-law torts of Negligence/Wrongful Death (Count I), Negligence (Count II), Failure to Warn (Count III), Intentional/Negligent Infliction of Emotional Distress (Count IV), Loss of Consortium (Count V), and Gross Negligence/Recklessness (Count VI).  The State Tort Suit complaint did not allege any causes of action under federal law.  The State Tort Suit appears to have been authorized by the Saving to Suitors clause found in 28 U.S.C. § 1331(1).  See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 440 (2001); In re. X-Treme Parasail, Civ. No. 05-00790 SOM/BMK, Order Lifting Injunction; Order Denying Request to Enjoin Claims Against Greg S. Longnecker; Order Dismissing Case, electronically filed in the

United States Court for the District of Hawaii on July 7, 2006, as Item No. 77 in the case docket, available through the court's Case Management/Electronic Case Filing system accessible through the PACER system.

On December 8, 2003, Morning Star Cruises filed a Complaint for exoneration from or limitation of liability under 46 U.S.C. §§ 181 to 195 (the "Limitation Act") and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. See Complaint, Civ. No. 03-00672 SOM/BMK (Dec. 8, 2003) ("Limitation Act Suit").

On September 29, 2004, Morning Star Cruises removed the State Tort Suit to this court. See Notice of Removal, Civ. No. 04-00588 DAE/KSC (Sept. 29, 2004). The State Tort Suit Plaintiffs stipulated to the removal. See id., Ex. A. Pursuant to the same stipulation, the State Tort Suit Plaintiffs' Complaint was deemed to state their claims in the Limitation Act Suit. Id. The parties also stipulated to the consolidation of the State Tort Suit and the Limitation Act Suit.[1]

Although titled "Limitation Plaintiff's Motion for Summary Judgment in Favor of Plaintiff's Complaint for Exoneration From or Limitation of Liability," Morning Star

---

[1] At the hearing, the court discussed with the parties whether the State Tort Suit was improperly removed and, if so, whether it should now be remanded. The parties will file briefs on these issues limited to 1,500 words no later than August 3, 2006. A hearing will be held on these issues on August 21, 2006, at 11:15 a.m.

Cruises' present motion asks this court only to determine whether it has admiralty jurisdiction over the Limitation Act Suit.[2] The court rules that it has admiralty jurisdiction over the Limitation Act Suit, leaving for further adjudication whether Morning Star is entitled to exoneration from or limitation of liability.

II.     NO FURTHER CONTINUANCES OF THE TRIAL DATE WITHOUT THE TRIAL JUDGE'S CONSENT.

On September 12, 2005, this judge entered an Order Regarding Trial Date, ordering that "[t]he presently assigned trial date of April 25, 2006, may not be continued without the express consent of the trial judge." On March 14, 2006, at the parties' request, this court continued the trial date to August 22, 2006, stating that "no further continuances will be granted."

On July 3, 2006, the parties asked Magistrate Judge Barry M. Kurren to again continue the trial date. This was contrary to the trial judge's intention that the trial not be continued without the trial judge's express consent. The trial is now set for February 21, 2007. So long as these consolidated

---

[2] At the hearing, Morning Star Cruises agreed that its motion did not actually put the State Tort Suit Plaintiffs on notice that it was seeking exoneration from or limitation of liability via the motion. Morning Star Cruises agreed to file a motion seeking exoneration from or limitation of liability no later than July 21, 2006. To the extent that Morning Star Cruises may be seeking only limitation of liability, it should make that clear in its motion. A hearing will be held on that motion on August 21, 2006, at 11:15 a.m.

cases are assigned to this judge for trial, this trial date shall not be continued without this judge's express consent.

III.     ANALYSIS.

Under 28 U.S.C. § 1333(1), "Federal Courts have exclusive jurisdiction over admiralty and maritime claims." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 440 (2001). Admiralty and maritime law includes numerous rights, duties, rules, and procedures, including the "Limitation Act," which "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." Id. at 446. Under the Limitation Act, the court, sitting without a jury, adjudicates the claims by determining whether the vessel owner is liable and whether the owner may limit liability.[3] Id. at 448.

The present motion asks this court to determine that it has admiralty jurisdiction, thus allowing Morning Star Cruises to seek protection under the Limitation Act. The Supreme Court has set forth a multi-part test for determining whether admiralty jurisdiction exists:

> [A] party seeking to invoke federal admiralty
> jurisdiction pursuant to 28 U.S.C. § 1333(1)
> over a tort claim must satisfy conditions

---

[3]"The Limitation Act was designed to encourage investment in the shipping industry by limiting the physically remote shipowner's vicarious liability for the negligence of his or her water-borne servants." Suzuki of Orange Park, Inc., v. Shubert, 86 F.3d 1060, 1064 (11th Cir. 1996).

>           both of location and of connection with
>           maritime activity.  A court applying the
>           location test must determine whether the tort
>           occurred on navigable water or whether injury
>           suffered on land was caused by a vessel on
>           navigable water.  The connection test raises
>           two issues.  A court, first, must assess the
>           general features of the type of incident
>           involved to determine whether the incident
>           has a potentially disruptive impact on
>           maritime commerce.  Second, a court must
>           determine whether the general character of
>           the activity giving rise to the incident
>           shows a substantial relationship to
>           traditional maritime activity.

Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995).

The parties do not dispute that the location prong is satisfied here.  See Courtney v. Pac. Adventures, Inc., 5 F. Supp. 2d 874, 877 (no dispute that an accident involving a scuba diver injured by a propeller satisfied the location prong), recon. denied 27 F. Supp. 2d 1223 (D. Haw. 1998); McClenahan v. Paradise Cruises, Ltd., 888 F. Supp. 120, 121 (D. Haw. 1995) (finding the location prong was "plainly satisfied" in an incident in which people were injured while participating in SNUBA, an activity similar to snorkeling that uses a common air supply floating on the surface with an air hose for a group of divers).

The connection test is also satisfied.  Looking first at the general features of the incident, the court finds that it "has a potentially disruptive impact on maritime commerce."  In examining this potential disruptive impact, this court considers

the issue using an "intermediate" level of generality.  Grubart, 513 U.S. at 538; Taghadomi v. United States, 401 F.3d 1080, 1086 (9th Cir. 2005).  Grubart involved allegations of negligence in replacing wooden pilings.  In examining the allegations under an "intermediate" level of generality, the Supreme Court described the general features of the incident as "damage by a vessel in navigable water to an underwater structure."  Using a similar level of generality here, the Accident may be described as involving a vessel on navigable water that caused an underwater injury.

The second part of the connection test is also satisfied, as the general character of the activity giving rise to the Accident shows a substantial relationship to traditional maritime activity.  In Grubart, the Supreme Court stated that, "as long as one of the putative tortfeasors was engaged in a traditional maritime activity[,] the allegedly wrongful activity will 'involve' such traditional maritime activity and will meet the second nexus prong."  Grubart, 513 U.S. at 541.  In other words, "[t]he substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident."  In the present case, the State Tort Suit Complaint alleges that Morning Star Cruises negligently caused the Accident.  Although some of the alleged negligence involved conduct that may have occurred on

land or in connection with a recreational activity that may not be considered a traditional maritime activity, some of the alleged negligence involved traditional maritime activities. For example, the Complaint alleges that Morning Star's negligence arose from its "failure to have a certified first-aid person at the diving activity," from its "failure to have sufficient number of qualified personnel at the activity," and from its "failure to implement appropriate safety and first aid procedures." See Complaint, ¶ 12. Clearly, how a vessel should be staffed and the procedures that should be followed on the vessel involve traditional maritime activities. See, e.g., Pac. Adventures, 5 F. Supp. 2d at 878 ("These allegations involve the operation of a vessel and the failure to administer first aid, activities that establish a substantial relationship with traditional maritime activities.").

IV. CONCLUSION.

Because both the location and connection prongs of the test for admiralty jurisdiction are satisfied, this court has admiralty jurisdiction over the Limitation Act Suit. This order disposes of the motion filed by Morning Star Cruises on May 17, 2006.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 18, 2006.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

In re Morning Star Cruises, et al., Civ. Nos. 03-00672 SOM/BMK and 04-00588 SOM/BMK; ORDER DETERMINING EXISTENCE OF ADMIRALTY JURISDICTION