IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In the Matter | ) | CV NO. 03-00672 SOM-BMK |
| of | ) | |
| The Complaint of MORNING STAR CRUISES, INC., a Hawaii corporation. | ) | |
| SHIROH FUKUOKA, | ) | CV NO. 04-00588 SOM-BMK [CONSOLIDATED] |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF MOTION** |
| MORNING STAR CRUISES, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION

**I.   Introduction**

This case arises out of a maritime incident that occurred on August 14, 2002, when Mitsuko Fukuoka, and her family signed up for an activity with Morning Star Cruises Inc. (hereinafter "Morning Star"). Ms. Fukuoka, her family, and three other participants registered to participate in "SeaWalker" activity Kaneohe Bay Ocean Recreation Management Area. Prior to transportation from the shore to the dive site, participants were given a disclaimer to sign and review.

See Exhibit "1", a copy of the disclaimer in Japanese signed by Ms. Fukuoka, and Exhibit "2," a translated copy of the signed waiver.[1] The signed disclaimer discharges Morning Star from all liability resulting from negligence. See Exhibit "2." On the disclaimer, participants also certified that they did not suffer from, or have a history of, inter alia, heart disease or high blood pressure. See Exhibit "2." After signing the waiver, participants were given safety instructions in the use of the SeaWalker system. See Exhibit "3."

      The "SeaWalker" system is comprised of an underwater helmet and a compressor system that delivers a continual stream of fresh air to the helmet. Users descend to the ocean floor using a special "SeaWalker ladder" and stroll on the ocean floor. Participants are instructed to give hand signals to the instructors/safety divers if they experience any difficulty or distress.

      After participating for approximately five minutes, Mitsuko Fukuoka gave divers mixed signals for okay/distress. In response, the divers escorted her to the ladder where she went limp. The safety diver carried her to the surface of the water. In accordance with their safety procedures, the crew called in a speedboat to take Mitsuko Fukuoka to shore and called EMT services who subsequently took Mitsuko Fukuoka to Castle Medical Center. Ms. Fukuoka expired two days later.

---

[1] The Declaration of Steven C. Silver, translator of the disclaimer from Japanese to English is attached.

7

According to the autopsy, Ms. Fukuoka suffered a cardiac event during her participation underwater due to medical conditions she suffered from including ischemic heart disease and cardiomegaly. See Exhibit "4", p. 3. After Ms. Fukuoka collapsed underwater due to myocardial ischemic episode, she lost the oxygen supply to her brain and died as a direct consequence of her heart attack. See Report of Expert Dr. William Brady, p. 2, attached hereto as Exhibit "5."

On September 8, 2003, a lawsuit was commenced in the Circuit Court of the First Circuit of the State of Hawaii, Civil No. 03-1-1819, captioned SHIROH FUKUOKA, *Individually and as Personal Representative of* THE ESTATE OF MITSUKO FUKUOKA, *and as Next Friend of* MIHO FUKUOKA, *a Minor, Plaintiffs*, (hereinafter collectively referred to as "Plaintiffs/Limitation Defendants") vs. MORNING STAR CRUISES, INC., a HAWAII CORPORATION et al., Defendants.

Subsequently, Morning Star filed a First Amended Complaint for Exoneration from or Limitation of Liability, Civil No. CV03-00672 SOM, in the United States District Court for the District of Hawaii on December 18, 2003 pursuant to the U.S. Limitation of Liability Act, 46 U.S.C.A § 183 *et seq.*, and the Federal Rules of Civil Procedure 9(h) and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

MORNING STAR CRUISES, INC. now seeks an order granting summary judgment against Plaintiffs/Limitation Defendants SHIROH FUKUOKA, *Individually and as Personal Representative of* THE ESTATE OF MITSUKO FUKUOKA, *and as Next Friend of* MIHO FUKUOKA, *a Minor.*

## II.  Legal Standard for Summary Judgment

Rule 56(c) of the *Federal Rules of Civil Procedure* provides in pertinent part as follows:

> [Summary Judgment] **shall be rendered forthwith** if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. (emphasis added)

Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.*

The United States Supreme Court has stated that summary judgment must be granted against a party who fails to demonstrate, after an adequate time for discovery, that there is a genuine issue of facts to establish elements essential to his case where that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed2d 265 (1986).

"If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes

9

demonstrate the absence of any genuine issue of material fact..., the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contracotrs Ass'n* 809 F.2d 626, 630 (9th Cir. 1987).

The United States Supreme Court has established that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, if the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," the motion for summary judgment should be granted. *Id.* at 1356.

### III. Discussion

Morning Star Cruises is entitled to summary judgment as a matter of law based on the doctrine of assumption of risk, both implied assumption of risk and express assumption of risk. "Assumption of risk is generally categorized as either express, in the sense of an express contract to relieve the defendant of certain duties, or implied, where relief from liability is implied from plaintiff's act of electing to participate in the underlying activity despite known or reasonably foreseeable risk." *Foronda v. Hawaii Intern. Boxing Club*, 96 Hawai'i 51, 59, 25 P.3d 826, 834 (Haw. App 2001). In the present case, Ms. Fukuoka both signed an

10

express contract waiving her right of a negligence claim against Morning Star and impliedly assumed risk when she elected to participate in the underwater SeaWalker activity despite the known risks.

    A.    **Morning Star Cruises is entitled to summary judgment based on the doctrine of implied assumption of risk.**

Implied assumption of risk has been used in the context of negligence cases to describe two distinct theories under which a defendant may avoid liability; primary and secondary implied assumption of risk. *See* Restatement (Second) of Torts, § 496A comment c.; *Tancredi v. Dive Makai Charters*, 823 F.Supp. 778 (D. Hawai'I 1993), overruling on other grounds recognized by, *McClenahan v. Paradise Cruises, Ltd.*, 888F. Supp. 120 (D. Hawai'I 1995). Primary assumption of risk describes the act of a plaintiff, who has entered voluntarily and reasonably into some relation with defendant, which plaintiff knows to involve the risk. *Foronda* 96 Hawai'I 51 at 59. Secondary assumption of risk focuses on a plaintiff's conduct, and describes a situation where plaintiff knows the danger presented by a defendant's negligence and proceeds voluntarily and unreasonably to encounter it. *Id.*; Restatement (Second) of Torts § 496A comment c.

There are two factors considered in applying the doctrine of primary assumption of risk. *Tancredi*, 823 F.Supp. 778 at 788. The first factor is whether the defendant owed a legal duty to protect plaintiff from the particular risk of harm that caused the injury; the second factor is whether plaintiff had knowledge and

11

full appreciation of the danger involved and voluntarily and deliberately exposed himself to the risk. *Id.*

In Foronda, the Hawaii Supreme Court held that primary implied assumption of risk is a discrete and complete defense in sports injury cases. Foronda, 96 Hawai'I 51 at 61 (boxer fatally injured after falling between the ropes of a boxing ring while sitting on the ropes resting after sparring). *See also* Knight v. Jewett, 3 Cal.4[th] 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 (1992) (holding the defense of implied assumption of risk applicable where a finger was stepped on by a fellow participant in a touch football game); *Ford v. Gouin*, 3 Cal.45h 339, 11 Cal.Rptr.2d 30, 834 P.2d 724 (1992) (implied assumption of risk a defense where the back of a water skier's head was hit by a tree limb).

In determining the application of primary implied assumption of risk, the court agreed with this Court's prediction, in Tancredi, 823 F.Supp. 778 at 788, that "the Hawaii Supreme Court would allow the defense of [primary implied assumption of risk] in an appropriate sports related case." Id. In Tancredi, this Court noted that there are inherent risks involved in recreational scuba diving. Tancredi, 823 F.Supp. 778 at789. A proprietor is not required to protect customers from "inherent, obvious and unavoiadable risks" in a sport. *See* Goldmine, 266 Cal.Rptr. at 755, citing *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); Tancredi, 823 F.Supp. 778 at789. While the SeaWalker does not

pose the same risks as scuba diving, users are 12-15 feet underwater when participating in the activity, participants are enabled to walk on the ocean floor with the assistance of the helmet attached to an air hose on the vessel above that pumps a continuous flow of fresh air into the helmet. In any ocean activity, there is the inherent risk of drowning; obviously, this risk is increased in an underwater activity such as the SeaWalker.

While there is inherent risk involved in participating in an underwater activity, the sponsoring business entity is obligated with a duty of ordinary reasonable care to protect the participant from unassumed, concealed, or unreasonably increased risks. See <u>Benitez v. New York City Board of Education</u>, 73 <u>N.Y.2d 650, 543, N.Y.S.2d 29, 541 N.E.2d 29 (1989)</u> (holding that plaintiff, a high school football player seriously injured in a mismatched football game put himself at risk for the inherent risks of fatigue and injury in team competitive sports); <u>Tancredi</u>, 823 F.Supp. 778 at789 (court held that plaintiff in a fatal scuba diving incident should have been aware of the inherent dangers of scuba diving; however because the dive was a "deep dive", he did not appreciate the inherent dangers in the type of dive). Morning Star fulfilled its duty of ordinary reasonable care to protect participants from unassumed, concealed, or unreasonable risks. Morning Star provided instructions to the participants; insured that participants verified that they did not suffer from any medical conditions that would complicate

13

participation in an underwater activity; had established emergency procedures; and utilized PADI certified, NAUI certified, and First Aid certified crew. There were no extraordinary risks involved in the particular SeaWalker excursion Ms. Fukuoka participated in. Fully aware of the obvious inherent danger involved in an underwater ocean sport, Ms. Fukuoka voluntarily participated in the SeaWalker activity. Ms. Fukuoka, whom had a non-disclosed medical history of high blood pressure and heart disease[2] (See Exhibit "4", Coroner's Report), voluntarily participated in the activity; Ms. Fukuoka's willing participation in an underwater activity with the inherent risk of drowning effectuates the doctrine of primary implied assumption.

### B. Morning Star Cruises is entitled to summary judgment because Fukuoka executed a valid waiver voluntarily waiving her right to sue for negligence when she participated in the SeaWalker activity.

Hawaii has accepted the use of express assumption of risk as a separate defense that may bar a plaintiff's recovery in tort. *Tancredi*, 823 F.Supp. 778 at 788; *Larsen v. Pacesetter Systems, Inc.* 837 P.2d 1273, 1291 (Hawaii 1992). The K.B.O.S. SeaWalker Disclaimer Agreement specifically states, "[I hereby agree to release and discharge KBOS, the travel agency, HMA, PADI and PADI instructors/Seawalker instructors from all liability arising out of personal injury, accidents, damages to personal property, or fatal accidents resulting from

---

[2] Had Morning Star been informed that Ms. Fukuoka suffered from high blood pressure and a history of heart disease, they would have refused to allow her to participate.

14

carelessness." See Exhibit "2." In addition, the disclaimer also states, " Further, I have carefully read and understood this Disclaimer Agreement prior to signing same." Id. Ms. Fukuoka manifested a clear and unequivocal acceptance of the terms of the waiver when she reviewed and signed the disclaimer.

"The general rule of contract law is that one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained." Courbat v. Dahana Ranch, Inc. L 1883449, p. 7 (Hawai'I, 2006) (quoting Leong v. Kaiser Found. Hosps., 71 Haw. 250, 245, 788 P.2d 164, 168 (1990)); see also *Joaquin v. Joaquin*, 5 Haw.App. 435, 443, 698 P.2d 298, 304 (1985); *In re Chung* 43 B.R. 368, 369 (Bankr.D.Haw.1984). "Parties are permitted to make exculpatory contracts so long as they are knowingly and willingly made and free from fraud. No public policy exists to prevent such contracts." *Fujimoto v. Au*, 95 Hawai'I 116, 156, 19 .3d 699, 739 (2001) (quoting *Gen. Argain Ctr. V. Am Alarm Co., Inc.* 430 N.E.2d 407, 411-412 (Ind.Ct.App. 1982)). Exculpatory clauses are void though if the agreement is "(1) violative of a statute, (2) contrary to a substantial public interest, or (3) gained through inequality of bargaining power." *Courbat* L 18883449 at 8; *Fujimoto* 95 *Hawai'i* at 156, 19 P.3d at 739 (quoting *Andrews v. Fitzgerald*, 823 F.Supp. 356, 378 (M.D.N.C. 1993)).

Plaintiff's do not allege that any of the terms of the disclaimer, or use of a disclaimer violate a statute. Morning Star Cruises used a disclaimer for the

15

SeaWalker activity as well as other ocean sports that it provided. Such a waiver is not uncommon in the entertainment tourism industry.

In *Krohnert v. Yacht Sys. of Hawaii*, 4 Haw.App. 190, 199, 664 P.2d 738, 744 (1983), the ICA defined public interest as involving some or all of the following characteristics:

1. It concerns a business of a type generally thought suitable for public regulation.
2. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.
3. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.
4. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.
5. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation and makes no provision whereby a purchaser may pay additional fees and obtain protection against negligence.
6. As a result of the transaction, the person or property of the purchaser is placed under the control of the seller of the service, subject to he risk of carelessness by the seller or his agents.

(quoting *Lynch v. Santa Fe Nat'l Bank*, 97 N.M. 554, 627 P.2d 1247, 1251-52 (N.M.Ct.App.1981).

Applying these factors to the present case, it is clear that public interest is not at stake: "recreational activity tours are not generally suitable to public regulation, in the manner of common carriers, nor of great importance to the public, nor of an essential nature, in the manner of medical care, such that the

16

provider's bargaining power is greatly enhanced over any member of the public seeking their services." *Courbat* L 1883449 at 9 (horseback riding tour).

Finally, as this Court has noted in *Wheelock v. Sport Kites, Inc.* 839 F.Supp. 730, 736 (D.Haw. 1993), that when considering negligence waivers in the context of recreational activity, while such waivers may be contracts of adhesion, in that they are presented on a "take-it-or-leave-it" basis, they are not unconscionable, but "are of a sort commonly used in recreational settings" and "are generally held to be valid." "Adhesion contracts are fully enforceable provided that they are not unconscionable and do not fall outside the reasonable expectations of the weaker or adhering party." Id. at 735. In this instance, there was no absence of alternatives to signing the contract, the activity was undertaken for recreational purposes. Ms. Fukuoka read through the disclaimer form written in Japanese and was given instructions prior to participating. Ms. Fukuoka agreed to the terms of the disclaimer, had knowledge of its contents, and her signature on the disclaimer indicates a valid waiver against a claim for negligence. There is no genuine issue of material fact that Ms. Fukuoka's expressly assumed the inherent risk of drowning when she executed the valid disclaimer. Her express assumption of risk precludes Plaintiffs from asserting a negligence claim against Morning Star Cruises.

## IV. Conclusion

Based on the foregoing, Defendant/Limitation Plaintiff Morning Star Cruises, Inc. respectfully requests an order granting Summary Judgment against Plaintiff/Limitation Defendants SHIROH FUKUOKA, *Individually and as Personal Representative of* THE ESTATE OF MITSUKO FUKUOKA, *and as Next Friend of* MIHO FUKUOKA, *a Minor,* and in favor of Morning Star Cruises, Inc.

DATED: Honolulu, Hawaii, September 20, 2006.

_____
**GREGORY K. MARKHAM
KEITH K. KATO
DESIREE HIKIDA MOKUOHAI**

Attorneys for /Defendant
Limitation Plaintiff
**MORNING STAR CRUISES, INC.**